# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Michael S. Kasanoff, Esq.
157 Broad Street, Suite 321
P.O. Box 8175
Red Bank, NJ 07701
(732) 747-5348
*Attorney for Plaintiff James Loures*

| | | |
|---|---|---|
| | : | |
| | : | |
| JAMES J. LOURES, JR. | : | CivilActionNo. |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| RURAL/METRO CORPORATION, | : | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| a Delaware corporation, and | : | |
| ACQUISITION I, INC., a | : | |
| Delaware corporation and wholly | : | |
| owned subsidiary, and | : | |
| MULTI-HEALTH CORP., a Florida | : | |
| corporation and wholly owned | : | |
| subsidiary, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

Plaintiff, James J. Loures, Jr. ("Plaintiff"), residing at 218 Sylvania Avenue, in the Borough

of Avon-By-The Sea, County of Monmouth, State of New Jersey, through his attorneys, by way of

Complaint for Declaratory Judgement against Defendants Rural/Metro Corporation, Acquisition I,

Inc., Multi-Health Corp. (referred to respectively as "Rural/Metro", "Acquisition I", and "Multi-

Health", and collectively as "Defendants") says:

1

## SUMMARY OF THE CASE

On September 5, 1997, Defendants acquired Plaintiff's company in which he was a principal shareholder ("the Acquisition").  Rather than receiving cash as consideration for the Acquisition, Plaintiff received a substantial amount of Rural/Metro stock.  About a year after the Acquisition, a securities class action was filed against Rural/Metro in the District of Arizona.  The value of the stock has plummeted.

On December 10, 1998, Plaintiff executed a release "the Release" in favor of Defendants, releasing them from any and all claims for liability in connection with the Acquisition.  Defendants, however, omitted to advise Plaintiff of multiple material facts regarding Rural/Metro's corporate well-being, or lack thereof.  If those material facts were truthfully disclosed, Plaintiff would have never executed the Release.  Plaintiff therefore seeks a declaratory judgment adjudging the Release null and void on grounds of fraud and misrepresentation.  Voidance of the Release will allow Plaintiff to pursue his substantial damages claims through arbitration.

## JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.  There exists an actual controversy pursuant to 29 U.S.C. § 2201 in that there is a substantial controversy between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The amount in controversy exceeds $75,000 in that if a declaratory judgement voiding the Release is granted, Plaintiff's damages claims for the lost value of his shares of Rural/Metro stock will exceed $75,000.  Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a)(2).

**PLAINTIFF**

1.      Plaintiff James J. Loures, Jr. resides at 218 Sylvania Avenue, in the Borough of Avon-By-The-Sea, County of Monmouth, State of New Jersey.  Plaintiff is Rural Metro's Director of Marketing regionally for New York and New Jersey, operating from Rural Metro's New Jersey office at 168 Main Street in the City of South Amboy, County of Middlesex, State of New Jersey. Prior to becoming affiliated with Rural/Metro, through the Acquisition, Plaintiff was a Principal Shareholder in Multi-Health Corp. ("Multi-Health"),  a successful, family owned  business, which provided ambulatory and other mobile health care services in the State of New Jersey.

**DEFENDANTS**

2.      Defendant Rural/Metro is a Delaware corporation headquartered at 8401 East Indian School Road in Scottsdale Arizona 82251.  Rural/Metro is a publicly traded company listed on the NASDAQ.  Rural/Metro is one of the world's largest providers of ambulatory and other mobile health care services, as it holds itself out the public as a leading provider of mobile health care services, including emergency and non-emergency ambulance transportation and fire protection to commercial, municipal, and residential customers.  Rural/Metro was the lead defendant in the recently settled securities fraud class action in the District of Arizona, captioned *Ruble et al. v. Rural/Metro Corporation et. al.*, Civ No. 99-822-PHX-RGS(HRH).  Rural/Metro is named in this proceeding as the main antagonist/perpetrator of the fraud in connection with both the Acquisition and the Release.

3.      Defendant Acquisition I, a Delaware corporation, subject to service of process though the Delaware Secretary of State, is/was a direct wholly-owned subsidiary of Rural/Metro.  Upon

information and belief, at the time of the Acquisition, Acquisition I was merged into Multi-Health. Acquisition I is named in this proceeding to the extent it is a party to the Acquisition, and subject to the Release.

4.     Defendant Multi-Health, a Florida corporation, subject to service of process though the Delaware Secretary of State, is a wholly-owned subsidiary and/or affiliate of Rural/Metro. Multi-Health continues to be engaged in the ambulance, emergency response, and medical and non-medical (wheelchair and livery) transport service business in the State of New Jersey. Multi-Health is named in this proceeding to the extent that it absorbed Acquisition I through merger, and is subject to the Release.

## BACKGROUND

5.     On September 5, 1997, the parties entered into the "AGREEMENT OF MERGER AND PLAN OF REORGANIZATION" (the "Merger Agreement") in which Rural/Metro's wholly owned subsidiary, Acquisition I, merged with Multi-Health and its subsidiaries.  The Merger Agreement arose during a time period when Rural Metro was engaging in a comprehensive strategy of aggressive acquisitions in order to keep its stock price high.  Moreover, Multi-Health's prior success made it a natural target for acquisition by Rural Metro.

6.     As consideration for the merger, Plaintiff received 120,000 shares of Rural Metro stock.   Plaintiff was given Rural/Metro stock rather than cash because Rural/Metro needed to conserve its cash for ongoing operations, as Rural/Metro had to use its stock for sizable acquisitions such as The Acquisition.  Plaintiff also entered into an employment agreement with Rural/Metro, which included a covenant not to compete.

7.     On April 23, 1998, Rural/Metro reported record results for the third quarter of 1998.

4

On June 11, 1998, Rural/Metro announced an earnings shortfall, a $10 million special charge for bad debt, and that the results for the fourth quarter of 1998 will be well below projected levels.  On this news, Rural/Metro's stock collapsed, falling nearly fifty-percent (50%), thereby severely damaging Plaintiff, whose consideration for the Acquisition consisted largely of Rural/Metro stock.

8.      Then on September 2, 1998, Rural/Metro was named as the lead defendant in securities fraud class action in filed in the District of Arizona, captioned *Ruble et al. v. Rural/Metro Corporation et. al.*, Civ No. 99-822-PHX-RGS(HRH) ("the Class Action").  The Class Action Complaint alleged that Rural/Metro failed to disclose the following materially adverse facts:

a.      Rural/Metro had severe problems with its billing and collection systems, and accounts receivables, especially with regard to the acquired companies;

b.      Rural/Metro was using improper accounting tricks and artifices to boost its results;

c.      Rural/Metro had inadequately trained personnel in its billing and collections department, which resulted in the accumulation of millions of dollars in uncollectible third-party reimbursement receivables;

d.      Rural/Metro's rapid growth had outstripped the ability of its managers and its management information systems to control and monitor its operations;

e.      Rural/Metro was encountering serious and persistent difficulties integrating the acquired operations, resulting in excessive costs and expenses;

f.      Rural/Metro was concealing these problems by manipulating its financial results to inflate its earnings, in part by deliberately setting its allowance for doubtful accounts receivable at artificially low levels, well below those required by GAAP;

g.      Rural/Metro falsified its reported results for the first three quarters of 1998 by engaging in a series of accounting maneuvers such as manipulating its reserves for doubtful accounts receivable to artificially low levels and burying operating costs in one-time special charges incurred in the acquisitions;

5

h.      Rural/Metro's alleged record financial results were due to the deliberate falsification of its financial results; and

i.      Rural/Metro's forecast of strong financial growth were false, because such growth could not and would not be obtained.

8.      As a result of these occurrences, Plaintiff and his fellow family members/shareholders advised Rural Metro that they wanted to rescind the Acquisition.   In order to placate Plaintiff, as well as the others, Rural/Metro granted each of them additional stock options.  Plaintiff entered into a new Employment Agreement, which provided him with 87,500 options @ $7.125 per share.

9.      In exchange for the options and Employment Agreement, Plaintiff signed the Release on December 10, 1998.   The Release essentially released Defendants for any and all claims in connection with the Acquisition.  Plaintiff entered into the Release, because at the time, based upon his review of Rural/Metro's financials, he had reason to believe that the worst was over, and that Rural/Metro's alleged deficiencies would not be a hindrance moving forward.  Indeed, Rural/Metro's June 11, 1998 press release specifically stated that the "operational issues have now been largely resolved though overtime and temporary staffing assignments."  The allegations in the Class Action at the time were just allegations, which according to Rural/Metro, were without merit.

10.     But the allegations were not "just allegations", and Defendants knew it.  Defendants omitted to advise Plaintiff of the findings made by the Gartner Group, a San Diego based information systems and management consultant specifically retained by Rural/Metro at a cost of $500,000 in December, 1995, to perform a year long study scrutinizing Rural/Metro's infrastructure and identifying means to remedy the severe deficiencies in Rural/Metro's management and information systems and support structures.

11.     Defendants, acting individually and on behalf of each other, for the purpose of defrauding Plaintiff and/or in reckless disregard of the truth, omitted to advise Plaintiff that according to the Gartner Group:

    a.    Rural/Metro had grown so fast that it had out-stripped the capability of its management and support structures;

    b.    Rural/Metro's billings and collection systems were outdated and overloaded;

    c.    Rural/Metro's billings and collections department was understaffed and manned by inexperienced temporary employees with little, if any, meaningful training in third-party reimbursement practices and procedures;

    d.    Rural/Metro's accounts receivable were ballooning;

    e.    Rural/Metro's management systems and support structures were so antiquated and rudimentary that Rural/Metro could absorb no new acquisitions without first expending substantial sums to repair its broken-down and obsolete infrastructure;

    f.    Rural/Metro needed to invest $20 million to bring its management systems to state-of-the-art level, or at least $6 million to bandage the existing system;

    g.    Rural/Metro need to install a human resource information system and a company-wide e-mail system, and replace its obsolete Computer Assisted Dispatch ("CAD") communication system, and procure maintenance agreements for its modern CADs.

12.     Defendants, acting individually and on behalf of each other, for the purpose of defrauding Plaintiff and/or in reckless disregard of the truth, further omitted to advise Plaintiff that:

    a.    Rural/Metro completely ignored the Gartner Group's advice to invest in upgrading its management systems and communication systems;

    b.    Rural/Metro neglected to invest sufficiently in management and information systems, spending only 1% of revenues compared to the industry standard of 8% of revenues on management and information systems;

    c.    Rural/Metro's October 23, 1997 press release overstated its first quarter 1998 earnings by 33%;

    d.    Rural/Metro inflated its first quarter 1998 earnings by using excessive

reserves                  and allowances which had been created by Rural/Metro in the current
quarter                   and earlier, which Rural/Metro used to artificially inflate its quarterly
earnings                  per share by converting the excess reserves and allowances into
income, in                direct violation of GAAP;

e.    Rural/Metro's January 22, 1998 press release overstated its second quarter
      1998 earnings by 15%;

f.    Rural/Metro inflated its second quarter 1998 earnings by using excessive
      reserves and allowances which had been created by Rural/Metro in the current
      quarter and earlier, which Rural/Metro used to artificially inflate its quarterly
      earnings per share by converting the excess reserves and allowances into
      income, in direct violation of GAAP;

g.    Rural/Metro materially overstated its second quarter 1998 earnings by
      improperly recognizing revenue on ambulance fees by overstating the amount
      Rural/Metro would ultimately be paid for such services by its clients and
      third-    party payors such as Medicare, Medicaid, and private insurers, in direct
      violation of GAAP;

h.    Rural/Metro's April 23, 1998 press release overstated its third quarter
      1998 earnings by 29%;

i.    Rural/Metro inflated its third quarter 1998 earnings by using excessive
      reserves and allowances which had been created by Rural/Metro in the current
      quarter and earlier, which Rural/Metro used to artificially inflate its quarterly
      earnings per share by converting the excess reserves and allowances into
      income, in direct violation of GAAP; and

j.    Rural/Metro materially overstated its third quarter 1998 earnings by
      improperly recognizing revenue on ambulance fees by overstating the amount
      Rural/Metro would ultimately be paid for such services by its clients and
      third-    party payors such as Medicare, Medicaid, and private insurers, in direct
      violation of GAAP.

13.    Defendants, acting individually and on behalf of each other, for the purpose of

defrauding Plaintiff and/or in reckless disregard of the truth, further omitted to advise Plaintiff of the

following findings made by Al Foreman, a Rural/Metro employee who performed a post-acquisition

review of several acquired companies in August 1997:

8

a.      Some of the acquire companies were not performing as expected;

b.      Rural/Metro was not enjoying operational efficiencies; and

c.      Rural/Metro's management systems did not appear to be increasing the productivity or the profitability of the acquired companies.

14.     Defendants, acting individually and on behalf of each other, for the purpose of defrauding Plaintiff and/or in reckless disregard of the truth, further omitted to advise Plaintiff of the true state of Rural/Metro, as revealed by Warren Rustand, Rural/Metro's CEO and Chairman of the Board, at Rural/Metro's June 22-23, 1997 Strategic Planing Meeting in Scottsdale Arizona:

a.      Rural/Metro had grown so fast that it had out-stripped the capability of its management and support structures;

b.      Rural/Metro's billings and collection systems were outdated and overloaded;

c.      Rural/Metro's billings and collections department was understaffed and manned by inexperienced temporary employees with little, if any, meaningful training in third-party reimbursement practices and procedures; and

d.      Rural/Metro's accounts receivable were ballooning.

15.     Defendants, acting individually and on behalf of each other, for the purpose of defrauding Plaintiff and/or in reckless disregard of the truth, further omitted to advise Plaintiff of the following findings made by Mike Sherry, a Rural/Metro employee, at a Strategic Planning Meeting in January 1998:

a.      Rural/Metro's billings and collections problems were spiraling out of control;

b.      The billings and collections departments could not collect accounts receivable efficiently;

c.      The number of illegible and incomplete billing tickets was swelling out of control;

      d.      The understaffed billings and collections department was forced to spend countless hours tracking down the correct information so that claims could be submitted in the proper form; and

      e.      Rural/Metro's management information system department was ignoring the three-year backlog of requests for technical assistance.

16.    Defendants, acting individually and on behalf of each other, for the purpose of defrauding Plaintiff and/or in reckless disregard of the truth, further omitted to advise Plaintiff that Rural/Metro's finances and accounting were in complete disarray, as evidenced by Rural/Metro's multiple "charges" and "restatements" which were made after the date of the Release, but encompassed periods prior to the execution of the Release.  These include:

      a.      January, 2000--significant restructure notice in the amount of $60-$75 million;

      b.      June, 2000--total charges for fiscal year in the amount of $98.6 million;

      c.      December, 2001--additional accounts receivable adjustment of $10 million;

      d.      September, 2001--adjustments to earnings of $150 million;

      e.      May, 2003--accounts receivable adjustment of $35 to $45  million; and

      f.      October, 2003--restatement for accounts receivable of $134 million.

Interestingly, Rural/Metro made the May, 2003 charge a mere three months after executing an updated employment agreement with Plaintiff, yet Rural/Metro never disclosed this imminent charge while the agreement was being negotiated.  Of further interest is the fact that Rural/Metro disclosed the October, 2003 restatement a mere 10 days prior to the expiration of the opt-out period for the Class Action.

17.    Had the aforementioned omissions of material fact been truthfully disclosed, Plaintiff

would have never signed the Release, and would have instead moved to rescind the Acquisition and pursue his substantial damages claims.

18.     Defendants undoubtedly acted with scienter.  Defendants had actual knowledge of all the omissions alleged herein.  Defendants knew about findings set forth in the Gartner Report, as the Gartner Group was specifically retained by Rural/Metro.  Defendants knew of the findings made by Al Foreman and Mike Sherry, as Foreman and Sherry were Rural/Metro employees specifically tasked to study these matters and render their findings.  Defendants knew what was revealed at the June 22-23, 1997 Strategic Planning Meeting, as the revelations about Rural/Metro's state of crisis were made by the Rural/Metro's CEO and Chairman of the Board, Warren Rustand,  presumably in a presentation to Rural/Metro's top management.  Rural Metro had to have known about its chronic and ongoing accounting deficiencies because Rural/Metro's status as a public company obligates it to render an honest accounting in order to conform with the reporting requirements imposed by the securities laws.  Further, it is quite a coincidence that the $134 million charge in October, 2003 was disclosed only 10 days prior to the expiration of the opt-out period for the Class Action.  At bare minimum, the foregoing demonstrates that Rural/Metro acted recklessly by failing to disclose the aforementioned material facts to Plaintiff.

19.     Defendants also had motive and opportunity.  In the fall of 1998, after being hit with the Class Action, and facing the prospect of Plaintiff filing suit to rescind the Acquisition,  and pursue his substantial damages claims, Defendants had substantial motive to defraud Plaintiff  into executing the Release.  Defendants were not only motivated to protect the Acquisition, and avoid paying damages for fraud, but a successful suit by Plaintiff may have adversely affected Rural/Metro's stock price, while also leading to a flurry of "copycat" lawsuits by the other acquired

companies.  Defendants had the opportunity to defraud Plaintiff because the facts regarding the true nature of Rural/Metro were exclusively within Defendants' control.

20.     A declaratory judgment will therefore serve a useful purpose in clarifying and settling the legal relations at issue, by determining whether the Release is void due to Defendants' fraud, misrepresentation, and/or overreaching.

21.     A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding, in that a judgment declaring the Release void due to Defendants' fraud, misrepresentation, and/or overreaching, will permit Plaintiff to pursue his substantial claims for damages in connection with the Acquisition.

22.     Plaintiff opted out of the Class Action on October 28, 2003, so the existence of the Class Action and settlement has no bearing on Plaintiff's standing to bring this action.

## COUNT I

## (COMMON LAW FRAUD)

23.     Plaintiff restates and realleges the allegations of Paragraphs 1 through 22 as the basis for this claim.

24.     The course of conduct described above constitutes fraud by Defendants towards Plaintiff.  Defendants' conduct was deliberate and with the intent of denying payment to Plaintiff. through fraud and deceit.

25.     Specifically, Defendants engage in the omissions of material fact chronicled in Paragraphs 10 through 19 herein.

26.     This fraudulent conduct detailed herein, amounted to omissions of presently existing

or past facts with the intent to deceive.

27.     Said omissions were made by Defendants with knowledge of their falsity and with the intention that Plaintiff rely thereon.

28.     Said omissions resulted in reliance by Plaintiff to his detriment.

29.     By reason of the foregoing, Defendants have engaged in common law fraud.

WHEREFORE, Plaintiff demands judgment as follows:

a.      pursuant to 28 U.S.C. § 2201, declaring the Release null and void, and rescinding it due to Defendants' fraud, misrepresentation, and/or overreaching;

b.      costs of suit;

c.      attorneys fees; and

d.      such other relief as the Court deems necessary and just.

## COUNT II

## (EQUITABLE FRAUD)

30.     Plaintiff restates and realleges the allegations of Paragraphs 1 through 29 as the basis for this claim.

31.     Defendants made the material omissions detailed herein, with the intention that Plaintiff rely thereon.

32.     Plaintiff actually and detrimentally relied on said false representations, as reliance on an omission is presumed.

33.     By reason of the foregoing, Defendants have engaged in equitable fraud.

WHEREFORE, Plaintiff demands judgment as follows:

a.      pursuant to 28 U.S.C. § 2201, declaring the Release null and void, and rescinding it

due to Defendants' fraud, misrepresentation, and/or overreaching;

b.      costs of suit;

c.      attorneys fees; and

d.      such other relief as the Court deems necessary and just.

## COUNT III

## (NEGLIGENT MISREPRESENTATION)

34.     Plaintiff restates and realleges the allegations of Paragraphs 1 through 33 as the basis for this claim.

35.     In making the material omissions detailed herein, Defendants negligently provided Plaintiff with false information and/or failed to provide Plaintiff with the true and correct information.

36.     Plaintiff is and/or was a reasonably foreseeable recipient of said omissions, each one made for its proper business purpose.

37.     Plaintiff actually and detrimentally relied on said omissions, as reliance is presumed.

38.     By reason of the foregoing, Defendants have engaged in negligent misrepresentation.

WHEREFORE, Plaintiff demands judgment as follows:

a.      pursuant to 28 U.S.C. § 2201, declaring the Release null and void, and rescinding it due to Defendants' fraud, misrepresentation, and/or overreaching;

b.      costs of suit;

c.      attorneys fees; and

d.      such other relief as the Court deems necessary and just.

## COUNT IV

## (BREACH OF FIDUCIARY DUTY)

14

39.     Plaintiff restates and realleges the allegations of Paragraphs 1 through 38 as the basis for this claim.

40.     Under the circumstances of this case, Plaintiff was justified in believing that Defendants would not act in a manner adverse to Plaintiff's interest.  Plaintiff reposed trust and confidence in Defendants.  This relationship of trust and confidence manifested itself in the fact that as a shareholder, Plaintiff was owed fiduciary duties by Defendants.

41.     Because of this relationship of trust and confidence, Defendants owed Plaintiff a fiduciary duty deal with him truthfully and honorably, and to employ  reasonable care to avoid misleading Plaintiff.

42.     Defendants knew or should have known that there existed a special relationship of trust and confidence between Plaintiff and Defendants, especially given that as a shareholder, Plaintiff was owed fiduciary duties by Defendants.

43.     By engaging in the aforementioned course of conduct, Defendants breached Defendants' fiduciary duties to Plaintiff.

44.     By reason of the foregoing, Defendants have engaged in breach of fiduciary duties.

WHEREFORE, Plaintiff demands judgment as follows:

a.     pursuant to 28 U.S.C. § 2201, declaring the Release null and void, and rescinding it due to Defendants' fraud, misrepresentation, and/or overreaching;

b.     costs of suit;

c.     attorneys fees; and

d.     such other relief as the Court deems necessary and just.

## COUNT V

## (BREACH OF CONTRACT)

45.     Plaintiff restates and realleges the allegations of Paragraphs 1 through 44 as the basis for this claim.

46.      The Release is a contract, to be interpreted in accordance with the principles of contract law.  The execution of the Release resulted in the formation of a contract between Plaintiff and Defendants.

47.     By engaging in the conduct chronicled herein, Defendants have breached the contract, and violated the implied covenant of good faith and fair dealing which pervades every contract.

48.     Defendant's breach of the contract is material and goes to the essence of the contract, and is detrimental to Plaintiff.

49.     By reason of the foregoing, Defendants have engaged in breach of contract.

WHEREFORE, Plaintiff demands judgment as follows:

a.      pursuant to 28 U.S.C. § 2201, declaring the Release null and void, and rescinding it due to Defendants' fraud, misrepresentation, and/or overreaching;

b.      costs of suit;

c.      attorneys fees; and

d.      such other relief as the Court deems necessary and just.

MICHAEL S. KASANOFF
Attorney for Plaintiff James J. Loures, Jr.

Dated: May 25, 2004         *Michael S. Kasanoff*
                            Michael S. Kasanoff

16